Daniel Ryweck and Reba Ryweck v. Commissioner.
Ryweck v. Commissioner
Docket No. 26965.
United States Tax Court
1954 Tax Ct. Memo LEXIS 304; 13 T.C.M. (CCH) 131; T.C.M. (RIA) 54048; February 11, 1954
*304 Respondent determined that unidentified cash deposits in bank and stock-brokerage accounts, dividends, interest, receipts from the sale of liquor, and commissions on such sales in the total amount of $58,839.03 constituted taxable income to Daniel Ryweck during 1944. Ryweck filed no return on the theory that alleged losses and expenses during the year more than offset any income which he received. 1. Held, Ryweck received gross income in 1944 of not less than $35,339.03. 2. Held, further, respondent did not err in asserting a 25 per cent penalty against Ryweck, pursuant to section 291 of the Code, for failure to file a return. Llewellyn A. Luce, Esq., and Samuel L. Siegal, Esq., R.K.O. Building, New York, N. Y., for the petitioners. Maurice E. Stark, Esq., for the respondent. RICE
Memorandum Findings of Fact and Opinion This proceeding involves a deficiency in income tax for the year 1944 of $34,059.44 and a penalty of $8,514.86, asserted under section 291 of the Code. The issues to be determined are: (1) did Daniel Ryweck (hereinafter referred to as the petitioner) receive taxable income of $58,839.03 in 1944; and (2) did respondent err in asserting a 25 per cent penalty for petitioner's failure to file a Federal income tax return for that year. Findings of Fact Petitioner and Reba Ryweck were husband and wife during the year 1944 and residents of New York, New York. They filed no Federal income tax return for such *306 year. During the year in question, petitioner was principally engaged as a liquor broker. As such, he acted as agent for Valente, Costa & Co., (hereinafter referred to as Valente) a Portuguese brandy and wine manufacturer. Henrique L. Valente, an official of the company, was in New York City during the Winter and Spring of 1944. In February 1944, Louis Mansbach (hereinafter referred to as Mansbach) purchased 2,000 cases of Valente Brandy through petitioner for sale to a liquor dealer outside of New York. Petitioner refused to accept the dealer's check, whereupon Mansbach issued his own check in the amount of $25,500 in full payment of the purchase price. The check was made payable to "Daniel Ryweck, Agent". This check, petitioner was unable to cash. Mansbach then issued another check in like amount to "Daniel Ryweck" which petitioner cashed. Of the total amount, petitioner retained $2,000 as his commission on the sale, and remitted the balance of $23,500 to Henrique L. Valente. In 1944, petitioner, in addition to his activities as a liquor broker, also maintained active accounts in his wife's name with three New York stock-brokerage firms. During the year, petitioner deposited *307 not less than $4,650 in the account maintained with H. Hentz & Co. and not less than $15,562.24 in the account with Sartorius & Co. He incurred interest expenses in connection with his stock purchases, as follows: H. Hentz & Co.
$199.29
Sartorius & Co.
124.68
Sutro Bros. & Co.
94.59
Total
$418.56 On September 25 and 26, 1944, he transferred securities from H. Hentz & Co. and Sartorius & Co. to Sutro Bros. During the balance of the year, he received interest and dividends totaling $950 from securities held in the Sutro Bros. account. Petitioner made deposits during the year in the Bank of Manhattan totaling $2,015. His wife made deposits in the same bank totaling $1,136.54. Petitioner also made deposits in the Bank of Athens totaling $3,420.25. Petitioner received commissions on sales made to the Alaska Pacific Sales Co., Seattle, Washington, of $4,450. In April 1944, he received deposits on merchandise to be purchased for one Sam Feldman totaling $3,040, which he refunded in full in December of that year. Petitioner received taxable interest income during the year totaling $775 and dividends totaling $1,330. Petitioner did not consult with counsel, but *308 filed no return in the belief that his losses for the year more than offset any income which he received. Respondent determined that petitioner received taxable income totaling $58,839.03, as follows: Deposits in bank and brokerage ac-
counts
$26,784.03
Dividends received
1,330.00
Interest received
775.00
Received from Alaska Pacific Sales
Co.
4,450.00
Received from Lou Mansbach
25,500.00
$58,839.03
On the basis of this determination, he asserted the deficiency and penalty here in question. Petitioner concedes he received dividends, interest, and commissions totaling $8,555; in addition he received other taxable income of not less than $26,784.03. He incurred no deductible losses nor business expenses during the year, except interest expense of $418.56. Petitioner, without reasonable cause, failed to file a return for the year in question, as required by section 51 of the Code. He maintained no books or records of his business activities. Opinion RICE, Judge: Pursuant to the authority contained in section 41 of the Code, the respondent has determined, from transcripts of stock-brokerage accounts, bank records, and from certain transactions in *309 the sale of liquor from which petitioner derived commissions, that petitioner received taxable income of not less than $58,839.03 during 1944. Because of his failure to file a Federal income tax return, a penalty of $8,514.86 has also been asserted under section 291 of the Code. Petitioner concedes that he received commissions, dividends, and interest income totaling $8,555 during the year. His petition alleges errors, generally, in the determination of any deficiency; and, specifically, in that he sustained "a foreclosure loss on business property amounting to not less than $54,000". On brief, he claimed business expenses of $5,200 and losses from his stock dealings of not less than $14,226.66. He contends that he suffered a net loss on all his business transactions for 1944 and, therefore, owes no deficiency and is not liable for the penalty asserted. The petitioner has offered sufficient evidence to justify our excluding $23,500 of the amount received from Mansbach, from gross income, as determined by the respondent. Mansbach's original check was made payable to petitioner as "Agent". Other testimony and the record as a whole corroborates petitioner's statement that the balance *310 after deducting his $2,000 commission was transmitted to Henrique L. Valente who was then in New York. Petitioner offered no acceptable evidence to overcome the prima facie correctness of respondent's determination that unexplained bank deposits totaling $6,571.79 and cash deposits in stock-brokerage accounts, maintained in his wife's name, totaling not less than $20,212.24, were additional income to him. Petitioner gave vague and wholly unsupported testimony that he received deposits from various purchasers, put them into his bank and brokerage accounts, and later refunded them. One such deposit, from Sam Feldman, we have found was received; and that later a refund was made. We are unable to identify the Feldman deposit as being among those bank and brokerage-account deposits which respondent included in determining the deficiency, and we accept his denial that it was so included. No mention was made during trial nor on brief of the alleged $54,000 loss from "foreclosure on business property", and the issue raised in the pleadings with respect to this item is deemed to be abandoned. Of claimed losses on stock purchases and sales, petitioner has offered no specific evidence *311 with reference to the shares on which a loss is claimed, when they were purchased, what price was paid, how long they were held, or for what price they were sold. Except for interest expenses of $418.56 which we found were incurred, the same is true of alleged business expenses of $5,200. Petitioner claimed he maintained an office at 7 East 42nd Street, which he shared with another and for which he paid $50 per month. It is incumbent on him to offer evidence of such payments. The same is true of alleged telephone and telegraph expense. Petitioner did not indicate when he traveled, where, how, what means of transportation he used, how long he was away from home, or even approximate the portion of the $5,200 claimed for all business expense which alleged travel and entertainment cost represented. The Cohan [1] rule does not presuppose an allowance for business expenses merely for the asking. The inexactitude of petitioner's claim is of his own making, and he must bear its consequences. See (C.A. 8, 1942); . *312 It is apparent from petitioner's argument with reference to the penalty for failure to file a return that he confuses "gross income" and "net taxable income". Section 22 of the Code includes within the definition of "gross income", all gains and profits from "any source whatever" - including interest and dividends and income from "trades, businesses, commerce or sales", but before any allowable deductions for expenses incurred in getting the income and before any losses are offset against such income. (promulgated January 18, 1954). Section 51 of the Code required every person having gross income of $500 or more in the taxable year 1944 to file a return; and section 291 imposed a penalty for failure to do so, absent, the showing of reasonable cause. Petitioner has not presented us with any reason which would excuse his omission to meet the Code's requirements. Decision will be entered under Rule 50. Footnotes
1. (C.A. 2, 1930).↩